UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| AMERICAN COUNCIL OF THE BLIND OF INDIANA, INDIANA PROTECTION AND ADVOCACY SERVICES COMMIS-SION, KRISTIN FLESCHNER, RITA KERSH, and WANDA TACKETT, | ) ) ) ) ) | Case No. 1:20-cv-3118-JMS-MJD |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| INDIANA ELECTION COMMISSION; THE INDIVIDUAL MEMBERS of the INDIANA ELECTION COMMISSION, in their official capacities; INDIANA SECRETARY OF STATE, in her official capacity; THE INDIANA ELECTION DIVISION; and THE CO-DIRECTORS OF THE INDIANA ELECTION DIVISION, in their official capacities; | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ................................................................................................................... 4

    I.    Accessible In-Person Voting Does Not Relieve Indiana of Liability for Inaccessible Absentee Voting. ............................................................................................................ 4

    II.    Indiana's Mandatory Traveling Board Clearly Violates Both the ADA and the Voting Rights Act, Demonstrating a Probability of Success on the Merits. ........................................... 5

    III.    Neither *Purcell* nor *Hernandez* Detracts from Plaintiffs' Showing of a Reasonable Likelihood of Success on the Merits Regarding a RAVBM. .................................................... 6

        A.    Contrary to Defendants' claims, Purcell v. Gonzalez, 549 U.S. 1 (2006), does not provide them with a shield against complying with the ADA. .................................................. 6

        B.    *Hernandez v. N.Y. State Bd. of Elections*, 479 F. Supp. 3d 1 (S.D.N.Y. 2020), does not exempt Defendants from the mandates of the ADA any more than *Purcell* does. ................. 10

    IV.    Defendants Cannot Avert Irreparable Harm to Plaintiffs in the May 2022 Election Through Their SEA 398 Plan. ................................................................................................ 12

    CONCLUSION.................................................................................................................. 14

## PRELIMINARY STATEMENT

Injunctions are critical tools for safeguarding civil rights.  In this instance, such a measure is clearly necessary to ensure that Plaintiffs can exercise their civil right under the Americans with Disabilities Act ("ADA") to a private and independent absentee ballot. Defendants indeed implicitly concede that Plaintiffs are qualified individuals with disabilities, that Defendants are entities subject to the ADA and the Rehabilitation Act, and that requiring a bond under Federal Rule of Civil Procedure 65(c) is unwarranted. Especially tellingly, Defendants provide no concrete answer to Plaintiffs' charge that Defendants' plan to implement Senate Enrolled Act 398 of 2021 ("SEA 398") will not be accomplished in time for Plaintiffs to be able to vote via accessible absentee ballots in the May 2022 election.  Instead, Defendants root their opposition in the preposterous claim, thoroughly debunked by caselaw, that people with disabilities do not have the right to vote absentee privately and independently like citizens without disabilities do. To justify a preliminary injunction, Plaintiffs need merely a "better than negligible" chance of succeeding on the merits, *see Valencia v. City of Springfield, Ill.*, 883 F.3d 959, 966 (7th Cir. 2018), which they have demonstrated here.

 Defendants' arguments that Plaintiffs' proposed remedy—namely, the Remote Accessible Vote By Mail ("RAVBM") tool—cannot be accomplished in time for the May 2022 election are tenuous at best.  First, as Plaintiffs' main brief sets forth, other states and large cities have implemented a RAVBM tool in times ranging from one to two weeks.  Defendants have been aware of the need for a RAVBM tool at least since the filing of the complaint in this case in December 2020; as courts have affirmed time and time again, the state cannot avoid its duties "by painting itself into a corner and then lamenting the view." *Steimel v. Wernert*, 823 F.3d 902, 918 (7th Cir. 2016). Second, Defendants' other factual objections are similarly without basis.  If Defendants cannot

meet the deadlines for sending out paper absentee ballots set out by statute because of their own delay, Filing No. 91-2 ¶¶ 5-6, that does not obviate the need to make absentee voting accessible on some time frame. After all, as the court recognized in *Taliaferro v. N.C. State Bd. of Elections*, "some days of access to a private, independent accessible absentee ballot are better than zero days of private, independent absentee voting." *Taliaferro v. N.C. State Bd. of Elections*, 489 F. Supp. 3d 433, 439 (E.D.N.C. 2020).  Third, all the logistics that Defendants complain of in connection with the implementation of a RAVBM—training of local officials, publicity to voters, and what to do if an accessible absentee ballot is cancelled, Filing No. 91-2 ¶¶ 7, 10—are the same logistics they are already required to plan for with Portable Document Format (.pdf) ballots under their own SEA 398 plan.  Quite simply, Defendants offer no credible or acceptable reason why Indiana cannot implement Plaintiffs' proposed remedy for the May 2022 election.

Defendants' emphasis on various rules and provisions unique to Indiana—such as the state's procurement rules or statutes governing state agencies' cybersecurity practices—are insufficient to exempt Indiana from having to implement an accessible and easily achievable voting method.  The caselaw is clear that a RAVBM that has not yet undergone traditional state requirements like certification is not a fundamental alteration of a state voting program.  *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 508-10 (4th Cir. 2016); *see also Hindel v. Husted*, 875 F.3d 344, 348-50 (6th Cir. 2017) (lack of RAVBM certification not a defense on the pleadings to suit for accessible voting via RAVBM).  Thus, the mere fact that Defendants have their own state statutory requirements does not insulate them from having to make reasonable modifications under the ADA; "[a]s the Sixth Circuit has put it, '[r]equiring public entities to make changes to rules, policies, practices, or services is exactly what the ADA does.'"  *Lamone,* 813 F.3d at 508-09 (*quoting Jones v. City of Monroe, Mich.*, 341 F.3d 474, 487 (6th Cir. 2003) (Cole, J., dissenting),

*abrogated in part on other grounds by Lewis v. Humboldt Acquisition Corp., Inc*., 681 F.3d 312 (6th Cir. 2012)) (*citing Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 300 F.3d 775, 782-83 (7th Cir. 2002), *abrogated on other grounds by Anderson v. City of Blue Ash*, 798 F.3d 338 (6th Cir. 2015); *accord Mary Jo C. v. N.Y. State and Local Ret. Sys.*, 707 F.3d 144, 163 (2d Cir. 2013) ( "If all state laws were insulated from Title II's reasonable modification requirement solely because they were state laws . . . the ADA would be powerless to work any reasonable modification in any requirement imposed by state law, no matter how trivial the requirement and no matter how minimal the costs of doing so.")).  So long as the underlying substantive purposes of the state requirements are met—"that the tool is reasonably secure, safeguards disabled voters' privacy, and . . . has been used in actual elections without apparent incident"—Defendants can be compelled to use that tool before the state requirements' process has been carried out. *Lamone*, 813 F.3d at 509. It bears noting that the use of an uncertified system in the May 2022 election is a temporary solution to the immediate problem of inaccessible absentee ballots.  In the future, Defendants can choose a RAVBM that successfully passes their certification process, or they can program their own online system, which would likely not require certification at all.  Filing No. 80-7 at 57-58 (IED Dep. 224:21-225:12).

In sum, nothing in Defendants' response nullifies the simple fact that federal disability rights laws require that people with disabilities have the same access to a private and independent absentee ballot as their counterparts without disabilities. As such, a preliminary injunction for the May 2022 primary election that (1) makes use of the traveling board permissive for voters with print disabilities rather than mandatory, and (2) directs Indiana to provide a web-based absentee ballot marking and submission option for use with assistive technology is appropriate—and indeed urgently necessary—to prevent continued discrimination against voters with print disabilities.

## ARGUMENT

**I.      Accessible In-Person Voting Does Not Relieve Indiana of Liability for Inaccessible Absentee Voting.**

Courts have emphatically rejected Defendants' position that Plaintiffs are unlikely to succeed on the merits because they allegedly have no right to vote absentee.  Filing No. 92 at 16-17. Voters with disabilities have a right to vote absentee on the same private, independent basis as nondisabled voters, and courts have held that the program, service, or activity at issue under the ADA is absentee voting, not "voting in its entirety."   *Lamone*, 813 F.3d at 503-05; *see Hindel*, 875 F.3d at 348-49 (assuming without deciding that absentee voting was the program, service, or activity to be analyzed); *Drenth v. Boockvar*, No. 1:20-CV-00829, 2020 WL 2745729, at *5 (M.D. Pa. May 27, 2020); *Democracy N.C. v. N.C. State Bd. of Elections*, 476 F. Supp. 3d 158, 231 (M.D.N.C. 2020); *Hernandez v. N.Y. State Bd. of Elections*, 479 F. Supp. 3d 1, 12 (S.D.N.Y. 2020); *see also Merrill v. People First of Ala.*, 141 S. Ct. 25, 27 (2020) (mem.) (Sotomayor, J., dissenting) ("Absentee and in-person voting are different benefits, and voters with disabilities are entitled to equal access to both"); *People First of Ala. v. Merrill*, 491 F. Supp. 3d 1076, 1158 (N.D. Ala. 2020) ("[B]ased on the ADA's broad remedial purpose, if a state provides voters with a choice between in-person and absentee voting, then the ADA mandates that both options be accessible to voters with disabilities.").  As such, Defendants cannot evade their obligation to provide access to the absentee voting program merely because they also offer in-person voting. *See, e.g.*, *United Spinal Ass'n v. Bd. of Elections in N.Y.C.*, 882 F. Supp. 2d 615, 623 (S.D.N.Y. 2012), *aff'd sub nom. Disabled in Action v. Bd. of Elections in N.Y.C.*, 752 F.3d 189, 199 (2d Cir. 2014) (warning that public entities must "provide a level of access to their voting program beyond the simple assurance that voters with disabilities are able to cast a ballot in some way, shape, or form."). Defendants cite no authority to the contrary.

II.     **Indiana's Mandatory Traveling Board Clearly Violates Both the ADA and the Voting Rights Act, Demonstrating a Probability of Success on the Merits.**

Defendants' argument that, in the absence of the constitutional right to vote absentee, there can be no right to choose the assistant of one's choice either is likewise wrongheaded.  Filing No. 92 at 21.  Plaintiffs' right to vote absentee in Indiana flows from the ADA.  In *Democracy N.C.*, the court found that North Carolina violated both the Voting Rights Act and the ADA by prohibiting a blind absentee voter from using the assistance of staff at his nursing home to mark his ballot while the nursing home was locked down because of COVID-19.  476 F. Supp. 3d at 233-35.  Here, the law at issue prevents voters with print disabilities from choosing *anyone at all under any circumstances* to assist them with marking their absentee ballots, rendering the traveling board at least as unlawful as the arrangement the court struck down in North Carolina.[1]  The fact that Defendants simultaneously permit voters with print disabilities to choose their own assistant when voting in person, *see* Filing No. 92 at 21, further highlights the unjustifiability of making the traveling board mandatory.

Defendants additionally urge that any change in the traveling board regime should not be permitted under *Purcell v. Gonzalez,* 549 U.S. 1 (2006).  But making the traveling board optional instead of mandatory will present none of the *Purcell* problems of cost, confusion, or hardship.  It is indeed *less* burdensome and costly for election officials to send a voter a paper ballot than to arrange for the traveling board.  Moreover, the minimal cost at issue—notifying voters with print disabilities and county Boards of Elections that a once-mandatory process is now optional—is clearly outweighed by the gain to independence, privacy, and convenience to voters with print

---

[1] As Plaintiffs set forth extensively in the moving brief, only traveling board voters are expected to admit two strangers into their homes; schedule that meeting during a time window less than half that provided to other absentee voters, during business hours only, at the whim of those strangers; disclose their personal and secret voting choices; and rely helplessly on those strangers to fill out the ballot accurately.  See Filing No. 82 at 7-8, 27.

disabilities. Accordingly, *Purcell* does not justify Defendants' continued violation of the ADA by requiring voters with print disabilities to rely on the traveling board.[2]

### III.    Neither *Purcell* nor *Hernandez* Detracts from Plaintiffs' Showing of a Reasonable Likelihood of Success on the Merits Regarding a RAVBM.

### A.   Contrary to Defendants' claims, Purcell v. Gonzalez, 549 U.S. 1 (2006), does not provide them with a shield against complying with the ADA.

Defendants' argument that *Purcell* prohibits the injunction Plaintiffs seek fails for two reasons. First, we are not "in the period close to an election." Second, even if we were, the injunction is permissible under the *Purcell* formulation.

While the Supreme Court has not clearly defined "the period close to an election" as used in *Purcell* and its progeny, many *Purcell* cases were decided on timelines far more compressed than the timeline here—namely, in the days or a week prior to the election at issue. In *Merrill v. Milligan*, Justice Kavanaugh stated that the definition of "close to an election" depends on the laws being challenged and the relief sought.  142 S. Ct. 879, 881 n.1 (2022) (mem.) (Kavanaugh, J., concurring).  Specifically, "[h]ow close to an election is too close may depend in part on the nature of the election law at issue, and how easily the State could make the change without undue collateral effects.  Changes that require complex or disruptive implementation must be ordered earlier than changes that are easy to implement."  *Id.*

"Close to an election" in *Merrill* encompassed a larger period.  That case involved a challenge to Alabama's congressional district maps under the Voting Rights Act.  *Id.* at 879.  The district court granted an injunction ordering the state to re-draw its maps.  *Id.*  The district court issued its order about four months prior to the upcoming primary elections.  *Id.* at 888 (Kagan, J.,

---

[2] Ultimately, dispensing with the mandatory traveling board would merely bring Indiana into conformance with the absentee voting practices of most states before 2020—the year when numerous courts held that a paper-only absentee ballot violates the right of voters with print disabilities to vote privately and independently and directed states to institute a RAVBM instead.  See Filing No. 82 at 3-4, 10-11, 29-30.

dissenting).  Justice Kavanaugh's concurrence noted that re-drawing congressional district maps would create significant challenges for candidates and parties (determining who would be able to run in which election and securing any necessary signatures to get on the ballot) and for election officials preparing for the election.  *Id.* at 880-82.  Thus, this was a complex issue, and the State could not make the changes required by the injunction without substantial collateral effects.  The changes in *Common Cause Ind. v. Lawson*, 978 F.3d 1036, 1043 (7th Cir. 2020) and *Democratic Nat'l Comm. v. Bostelmann*, 977 F.3d 639, 641–42 (7th Cir. 2020), cited by Defendants—extending poll site hours, mandating universal mail-in voting, and extending deadlines for requesting and delivering mail-in ballots—potentially affected all voters in the affected jurisdictions, and changed the daily operation of elections in every county.  As in *Merrill*, those were truly massive changes.

Plaintiffs' request is much different. These changes are not nearly as complex and do not require nearly the same effort on the part of the Defendants to enact.  They do not affect all voters in the jurisdiction, nor do they change any widespread in-person operations at polling sites.  Defendants admit that SEA 398 requires them to serve voters with print disabilities.  Filing No. 92 at 4-5.  Defendants already claim to be rolling out a system to register accessible absentee voters as such.  Filing No. 91-3 at 1-2 (Declaration of Brad King).  The RAVBM system, which addresses only the need for an accessible absentee ballot, could be implemented quickly.  Filing No. 82 at 33-34.  As noted, it could be rolled out in as little as one to a couple of weeks. *Id.* at 34.  Thus, under Justice Kavanaugh's framework, the relief is not requested in "the period right before an election."

Even if that were not the case, the requested relief could still be granted under *Purcell*. *Purcell* and its progeny do not impose an automatic prohibition on relief in the period close to an election.  Rather, *Purcell* mandates a specific application of the ordinary preliminary injunction

standards, especially as to the balancing of equities.  *Merrill*, 142 S. Ct. at 881.  In his *Merrill* concurrence, Justice Kavanaugh suggested that the *Purcell* principle might be overcome if:  (i) the underlying merits are entirely clearcut; (ii) the plaintiff would otherwise suffer irreparable harm; (iii) the plaintiff has not unduly delayed bringing the complaint to court; and (iv) the changes in question are at least feasible before the election without significant cost, confusion, or hardship. *Id.* Under this standard, Plaintiffs still prevail. As demonstrated elsewhere, the merits are clear cut in Plaintiffs' favor. The Plaintiffs also plainly face irreparable harm.

Plaintiffs did not unduly delay bringing their complaint:  Indeed, it was originally filed in December 2020, 18 months before the May 2022 primary and four months before the passage of SEA 398.  *Cf.* Filing No. 92 at 9; *Actions for Senate Bill 398*, INDIANA GENERAL ASSEMBLY 2021 SESSION, http://iga.in.gov/legislative/2021/bills/senate/398 (last visited Feb. 22, 2022).  Further, Plaintiffs have not unduly delayed requesting this preliminary injunction. This case was not in a posture for this request sooner. Defendants admitted in their accessible absentee voting policy issued in September 2021, Filing No. 80-11 at 8, that "[a] voter with print disabilities must be able to personally mark their own ballot, which would include the voter's personal use of adaptive technology to complete their ballot."  Plaintiffs had to conduct further discovery[3] into Defendants' accessible ballot planning, including whether such plans would, in fact, include a RAVBM option.[4] Plaintiffs filed this request eight business days after completing the last necessary deposition. *See* Filing No. 80-10 (Phelps Dep.).

[3] Rather than Plaintiffs being the source of the delay, Plaintiffs required the assistance of the court to schedule the 30(b)(6) depositions of Defendants in this case.  Filing Nos. 61, 63.

[4] Although Defendants' technology project managers offered to present options for a commercial or home-grown RAVBM after the December 2020 filing of the complaint, Filing No. 80-9 at 13-14 (Cooper Dep. 48:24-49:23, 50:18-51:17), Defendants did not even consider RAVBM options to implement SEA 398, Filing No. 80-7 at 56-58 (IED Dep. 220:24-221:17; 225:13-25), Filing No. 80-8  at 41 (SOS Dep. 159:23-25), or hire their project managers to assist with their own SEA 398 plan, Filing No. 80-9 at 15-17 (Cooper Dep. 53:19-23, 58:19-60:3, 62:4-63:15). Now the IED claims that it would violate *Purcell* to direct a RAVBM because it does "not proclaim to be an expert on RAVBM tools and [has] a very limited understanding of how those tools function."  Filing No. 91-2 ¶ 3.

Finally, for the reasons shown previously, the changes are feasible without sufficient cost, confusion, or hardship. Since at least May 2021, Defendants and their contractor Baker Tilly have been aware of the need to create and test an accessible electronic voting system and provide training to county officials, *see* Filing No. 93-1 (Senate Enrolled Act 398 Open Questions & Considerations) and Filing No. 93-2 (Senate Enrolled Act 398 Options), as well as the need to engage with vendors to do so, s*ee* Filing No. 93-3 at 1-2 (Correspondence from SOS to Baker Tilly and Civix describing the involvement of Baker Tilly and Civix in implementation of SEA 398)*.* Also in May 2021, Baker Tilly proposed a web-based ballot delivery and return system as an option to implement SEA 398. *See* Filings No. 93-1 and 93-2*.* However, Defendants declined to act on such a web-based option, Filing No. 80-9 at 31 (Cooper Dep. 119:25-120:2), and even declined to create a new contract with Baker Tilly or another contractor to address implementation of SEA 398 at all, *see id.* at 38 (Cooper Dep.147:12-148:11). It is no wonder then that they have done no planning whatsoever to produce accessible ballots, whether in .pdf form or otherwise, nor have they instructed the counties how to do so.  Filing No. 82 at 18 and evidence cited therein; Filing Nos. 91-2 and 91-3; Filing No. 80-7 at 49 (IED Dep. 189:13-20); Filing No. 80-7 at 49-50 (IED Dep. 192:14-193:22). The Court in *Taliaferro* found the defendants' similar inaction to address an inaccessible absentee voting system despite at least three months' notice of such barriers to weigh in favor of plaintiffs' request for a preliminary injunction. 489 F. Supp. 3d at 439. Indeed, Defendants here suggest that they are waiting for a court order to find out whether ballots truly need to be made accessible at all.  Filing No. 80-7 at 44-45 (IED Dep. 172:19-173:7). Since these tasks have not been started, an injunction would not disrupt work that has already been done or result in conflicting instructions.

Second, Defendants have not begun informing voters of the changes resulting from SEA 398 and do not intend to do so imminently.  Filing No. 80-10 at 35 (Phelps Dep. 134:3-12 ("[SOS] communications team [wants] to promote that to voters across the state here in the next couple of months.").  Thus, a change due to an injunction will not lead to voter confusion. Moreover, since Plaintiffs are not asking the Court to stop Defendants from using any particular form of voting, but only to direct additional forms (either filling out and submitting an absentee ballot by a RAVBM platform or with the assistance of someone other than the traveling board), there is even less possibility of confusion than if Plaintiffs were asking for an elimination of a currently available method.  Last, any potential hardship to Defendants is minimized here because any change will affect a small percentage of voters. *See, e.g.*, *Taliaferro*, 489 F. Supp. 3d at 440 ("[I]t is likely that the number of blind voters who opt into this system for the November 3 election will be low since this would be the first election where the electronic voting technology would be introduced . . . " (citation omitted)).

Plaintiffs finally note that Defendants' creation of a system for registration for an absentee ballot as described in Filing No. 91-3, without creation of a corresponding accessible absentee ballot for voters to mark, cannot be permitted to proceed either.  It will create the very confusion, chaos, and wasted effort *Purcell* seeks to avoid, and it will create these things for only voters with print disabilities.  That is the harm that the ADA seeks to prevent.

**B.  *Hernandez v. N.Y. State Bd. of Elections*, 479 F. Supp. 3d 1 (S.D.N.Y. 2020), does not exempt Defendants from the mandates of the ADA any more than *Purcell* does.**

While Defendants extensively rely on *Hernandez v. N.Y. State Bd. Of Elections*, 479 F. Supp. 3d 1 (S.D.N.Y. 2020) in their response, *see* Filing No. 92 at 19-20, that case is easily distinguished. First, the defendants in *Hernandez* openly acknowledged that absentee ballots must be made accessible in order for blind voters to use them. *Hernandez*, 479 F. Supp. 3d at 10.

10

Defendants here have done no planning to make accessible .pdf ballots a reality, Filing No. 80-7 at 44-45 (IED Dep. 172:19-173:7), meaning that they are not a realistic option here, Filing No. 80-6 ¶ 17.  Second, the defendants in *Hernandez* had already performed one election with .pdf ballots (on the consent of the plaintiffs),[5] were defending against a second preliminary injunction seeking to require RAVBM in the next election because of how badly the .pdf election allegedly went, and succeeded because they had a concrete plan on how to improve those problems "with longer lead time, greater scrutiny in vendor selection, and increased accessibility consulting." *Id.* at 16.  None of those things are available to Defendants here.  *Hernandez* is certainly a cautionary tale of how counties cannot make .pdf ballots accessible on their own and require copious instruction, practice, and outside help to do so.

Defendants also suggest that *Hernandez* is somehow relevant to their own secrecy waiver issue.  Filing No. 92 at 20.  However, unlike Indiana, New York has no fax or email ballot return to begin with, even for UOCAVA voters, such that all absentee ballots in New York are mailed, obviating the need for a secrecy waiver.  While Defendants did attempt to solve the fact that Indiana's UOCAVA process requires a signed secrecy waiver by providing that the waiver may be signed electronically "using a computer mouse or finger on a touch sensitive device," *see* Filing No. 80-11 at 7, this solution, unlike the one Plaintiffs propose, Filing No. 82 at 29-33, would

---

[5] In this context, Defendants' citation to the first *Hernandez* Declaration of Lou Ann Blake in that case (*see* Filing No. 82 at 19, Filing No. 91-8) is disingenuous.  The *Hernandez* court noted that this particular Blake declaration was in support of Plaintiffs' *first* preliminary injunction for any kind of accessible absentee voting system at all and was confined by its terms to that election.  479 F. Supp. 3d at 5.  Blake's original declaration was in the spirit of offering the National Federation of the Blind as a vendor to assist counties with producing accessible .pdf ballots as an "*interim* accommodation" for the June 2020 primary.  Filing No. 91-8 ¶ 13 (emphasis added).  After New York State's first election on .pdf ballots, Blake submitted later declarations in support of a second preliminary injunction requesting the use of RAVBMs, noting that "[m]any Boards of Elections do not have the knowledge and expertise in-house to make a .pdf ballot accessible. This makes this technique prone to mistakes if done in-house and deprives the jurisdiction of the ability to do quality control for .pdf remediation done by third parties. Such mistakes can result in a ballot being inaccessible to assistive computer technology, forcing voters using that ballot to compromise the privacy and independence of their vote by asking for help, or foregoing their vote altogether." Filing No. 93-4 ¶ 5 (*Hernandez* Filing No. 76 at ¶ 5).  As Defendants have worked with neither counties nor vendors to prepare accessible .pdf ballots, the point is moot.

remain inaccessible to voters with visual or dexterity disabilities. Filing No. 80-6 ¶¶ 26-29.  Regardless, Defendants cite no case that addresses all of the specific implementation difficulties at issue here, nor do they explain why they should not be required to implement a remedy that has been used successfully by over 20 states, especially when the ADA requires state and local entities to provide "effective communication" and to honor the voter's choice of method in doing so. Filing No. 82 at 10-12, 25, 29-31.

### IV.   Defendants Cannot Avert Irreparable Harm to Plaintiffs in the May 2022 Election Through Their SEA 398 Plan.

Defendants' SEA 398 implementation plan will not prevent Plaintiffs from experiencing irreparable harm in the May 2022 election.  *See* Filing No. 82 at 11-12, 19-20.  That plan, as Plaintiffs' moving brief sets forth in detail, falls far short of a complete accessible program in at least two ways: (1) It fails to provide for an accessible way to sign the secrecy waiver, and (2) it fails to set out a plan for accessible absentee ballots because it utterly ignores that the state's ninety-two counties will inevitably require extensive guidance and support to produce the 2,500 to 3,000 different ballot styles for the upcoming election. Filing No. 82 at 13-14, 16-17.  Defendants do not bother to meaningfully dispute that there is no planned accessible way to sign a secrecy waiver and that ninety-two counties will each need to come up with accessible ballots.  Filing Nos. 91-2, 91-3.  Moreover, the additional SEA 398-related documents Defendants have provided since the filing of the preliminary injunction motion—the combined voter registration and absentee ballot request form for voters with print disabilities—do not solve these crucial issues.  Filing No. 93-5 at 2-4 (Declaration of Terri Youngblood Savage ¶¶ 5-13).  The current implementation plan denies voters with print disabilities their right to a private and independent absentee ballot and will cause Plaintiffs irreparable harm.

Defendants' suggested remedies range from the unlawful to the outlandish.  It is not a "reasonable accommodation" under the ADA to abandon and cancel an absentee ballot and vote in person, Filing No. 92 at 22, because, as discussed above, absentee voting has repeatedly been recognized as a distinct program, service, or activity under the ADA. *See Lamone*, 813 F.3d at 503-05; *see Hindel*, 875 F.3d at 348-49; *Drenth*, 2020 WL 2745729, at \*5; *Democracy N.C.*, 476 F. Supp. 3d at 231; *Hernandez*, 479 F. Supp. 3d at 12; *see also Merrill v. People First of Ala.*, 141 S. Ct. at 27 (mem.) (Sotomayor, J., dissenting); *People First of Ala. v. Merrill*, 491 F. Supp. 3d at 1158. Defendants' other suggestion—namely, that "[a] voter could also bring a mandamus action in the appropriate trial court against a county board of elections to receive an order requiring the county board to send an absentee travel board to the voter's residence"—is equally implausible. Filing No. 92 at 22.[6]  Voters simply cannot be required to undertake such a burden—including but not limited to paying filing and service fees (*see* https://www.indy.gov/activity/filing-a-civil-case (last visited February 21, 2022))—to remedy the State's failure to make its absentee voting accessible. Rather, the State itself needs to address that inaccessibility. And the State, as Plaintiffs' brief demonstrates, can do so easily enough by instituting a RAVBM program as numerous other states have done to date.

Finally, Defendants' refusal to recognize that instituting a RAVBM tool would serve the public interest, *see* Filing 92 at 24, is unavailing in light of the fact that, as Plaintiffs discuss in their main brief, *see* Filing No. 82 at 34, several courts that have considered the issue have concluded that RAVBM tools do serve public interest and can be implemented in shorter time frames than the time frame Defendants face here.  Because RAVBMs are thus neither against the public

---

[6] To the extent that this mandamus plan addresses the second prong of the preliminary injunction analysis, that "traditional legal remedies would be inadequate" to address the irreparable harm posited by Plaintiffs, *Valencia v. City of Springfield, Ill.*, 883 F.3d 959, 965 (7th Cir. 2018), it does not speak to the harm of the traveling board itself, addressed above.

interest nor "logistically impossible," *see* Filing No. 92 at 24, Defendants can and should be required to implement this remedy for the May 2022 election.

## CONCLUSION

For all the reasons set forth above and in Plaintiffs' moving brief, Plaintiffs respectfully urge this Court to enter a preliminary injunction directing Defendants to use a RAVBM tool for accessible ballot marking and return and making the traveling board an optional rather than a mandatory accommodation for voters who cannot mark their own ballots.

This 23rd day of February, 2022.                    Respectfully submitted,

Christina Brandt-Young*
DISABILITY RIGHTS ADVOCATES
655 Third Avenue, 14th Floor
New York, NY 10017
Tel: (212) 644-8644
Fax: (212) 644-8636
cbrandt-young@dralegal.org

Samuel M. Adams (No. 28437-49)
Thomas E. Crishon (No. 28513-49)
INDIANA DISABILITY RIGHTS
4755 Kingsway Drive, Suite 100
Indianapolis, Indiana 46205
Tel: (317) 722-5555
Fax: (317) 722-5564
tcrishon@indianadisabilityrights.org
samadams@indianadisabilityrights.org

Stuart Seaborn*
Rosa Lee Bichell*
DISABILITY RIGHTS ADVOCATES
2001 Center St., 4th Floor
Berkeley, CA 94704
Phone: (510) 665-8644
Fax: (510) 665-8511
sseaborn@dralegal.org
rbichell@dralegal.org

Jelena Kolic*
DISABILITY RIGHTS ADVOCATES
10 South LaSalle Street, 18th Floor
Chicago, IL 60613
jkolic@dralegal.org

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 23rd, 2022, the foregoing document was filed electronically with the Clerk of the Court using the CM/ECF System for all parties, and otherwise and notice was provided via e-mail to:

> Jefferson S. Garn
> Deputy Attorney General
> Courtney Abshire
> Caryn Szyper
> OFFICE OF THE INDIANA ATTORNEY GENERAL
> Indiana Government Center South Fifth Floor
> 302 W. Washington Street
> Indianapolis, IN 46204-2770
> jefferson.garn@atg.in.gov
> courtney.abshire@atg.in.gov
> Caryn.Szyper@atg.in.gov

> *Attorneys for Defendants*

Christina Brandt-Young*
DISABILITY RIGHTS ADVOCATES
655 Third Avenue, 14th Floor
New York, NY 10017
Tel: (212) 644-8644
Fax: (212) 644-8636
cbrandt-young@dralegal.org

Samuel M. Adams (No. 28437-49)
Thomas E. Crishon (No. 28513-49)
INDIANA DISABILITY RIGHTS
4755 Kingsway Drive, Suite 100
Indianapolis, Indiana 46205
Tel: (317) 722-5555
Fax: (317) 722-5564
samadams@indianadisabilityrights.org
tcrishon@indianadisabilityrights.org

Stuart Seaborn*
Rosa Lee Bichell*
DISABILITY RIGHTS ADVOCATES

2001 Center St., 4th Floor
Berkeley, CA 94704
Phone: (510) 665-8644
Fax: (510) 665-8511
sseaborn@dralegal.org
rbichell@dralegal.org

Jelena Kolic*
DISABILITY RIGHTS ADVOCATES
10 South LaSalle Street, 18th Floor
Chicago, IL 60613
jkolic@dralegal.org

*Attorneys for Plaintiffs*

17